Good morning, your honors. May it please the court, counsel. I am not an appellate attorney. I am a trial attorney, and I have been one for nearly 30 years now, and there are cases that you know you will take to your grave, and this is one of them. This is a medical malpractice case that involves what should have been a very simple, straightforward gallbladder and hernia repair that went horribly wrong. On April 12, 2006, Dr. Anderson, the defendant, who was a general surgeon, performed a laparoscopic gallbladder removal and hernia repair on Dena Hartman at the St. Francis Medical Center in Peoria. Within hours of being discharged, Dena had returned to the emergency room with new onset abdominal pain. She was admitted on the theory that her incision sites were what was causing her pain. If you remember with a laparoscopic case, you are talking about very small holes closed by some of them with only band-aids, some with just a few stitches. That was a Wednesday evening. By Friday morning, the 14th of April, Dr. Anderson's advanced practice nurse, Janna Reed, acknowledged that Dena Hartman was massively septic. The clinical indications of infection had been present since her initial admission to the emergency room on Wednesday. On Friday afternoon, late Friday afternoon, Dr. Anderson performed exploratory surgery and found two holes in Dena Hartman's bowel that corresponded with the spot where he had taken the bowel that had been stuck in this small umbilical hernia out of the hernia. The holes had been caused during that takedown and had not been noted. As a result of her being septic and the bowel contents leaking over those days, a bunch of what are called new scar tissue called adhesions had formed and stuck her bowel together. Dr. Anderson had been required to run the bowel, which is basically go through an inch-by-inch along the length and cut out any sections that did not look viable. He cut out a number of sections of bowel and reattached them. That should have cured the problem, but it did not. Dena Hartman began experiencing unremitting diarrhea. I don't think the cold transcript can get across what this lady went through. Literally 24-7, had to be within a short walk of a bathroom the entire time, spent much of her time sitting on the toilet. She went to the Mayo Clinic. She went through all the doctors in Peoria. Nobody could discover the cause of this unremitting diarrhea. Eventually, she ended up at the Cleveland Clinic, where a world-renowned gastro surgeon opened her up and found that she had approximately half of the normal amount of small bowel that should have been there. This resulted in something called short bowel syndrome, which explained her diarrhea. Unfortunately, it couldn't be fixed. Over the course, her condition degraded to the point where she got all of her nutrition through tube feeding, called TPN, Total Parental Nutrition. She had a colostomy. Everything went in and went out of tube. She was completely disabled. We have a complex case. Mr. Smith and I, we realize, have spent basically a third of our respective legal careers working on this case. I want to focus on two points primarily to start with. If we have time, we'll go to the others, or we'll address whatever questions you all might have. My point number five, I think, is one of the most important, which is that in closing argument, Mr. Smith's defense counsel misstated the plaintiff's burden of proof. Mr. Smith said, I would propose to you, ladies and gentlemen, that if there is uncertainty in your mind, that means the burden of proof has not been met. I objected. The court did not sustain my objection, and Mr. Smith went on to repeat, so I would propose to you that if you get to the other end and you have uncertainty, that in itself proves that the burden was not met, and your verdict should be for Dr. Anderson. Merriam-Webster defines uncertainty as not known beyond doubt. Mr. Smith was arguing to this jury that the burden of proof was beyond a reasonable doubt, higher even than the criminal standard of proof. The correct standard of proof, as we all know, is IPR 2101, more probably true than not true. Surprising to me, there was all the law in this field came in the criminal context, at least that I was able to find, and we've cited those for you. The problem with the misstatement of the burden of proof is that the jury looks at everything through the microscope of a burden of proof. Everything that they look at, causation, negligence, damages, everything goes through that plaintiff's burden of proof. By misstating that burden of proof, and it's one of the last things that the jury hears, that is a just blatant misstatement of the law, and affects everything that the jury does. The trial court should have advised the jury that the defendant's statement was wrong, that that was not the burden of proof. No, what was the burden of proof instruction? Was it inappropriate? No, the burden of proof instruction was absolutely correct, and that's what I argued to the jury in my opening. I argued the burden of proof, and in their responding brief, the defense seems to indicate that Mr. Smith's misstatement of the burden was somehow in response to a misstatement of mine. The transcript shows that that is absolutely wrong. I quoted IPI 2101, okay, more likely true than not true. That is just a tip of the scale, nothing more. It is not, if there is any uncertainty. Well, we know what it is, so don't waste your time on that. Okay. The question is, is what does you say the transcript shows? The transcript shows, with regard to the arguments here, or with regard to how the jury was instructed? Well, you were saying the opposing counsel said that Mr. Smith's comments were in response to your misstatement. Correct. And if you look at the transcript, I did not misstate the burden of proof. Mr. Smith did not object to anything when I was arguing with regard to the instruction on burden of proof. He had an objection later on when I was going over the instruction for standard of care, and he objected to how I was characterizing that, but never objected to my argument about burden of proof, because he couldn't, because I was quoting the burden of proof. So you objected to his misstatement. Correct. I did, and the court did not sustain it, did not correct it, merely told the jury that they were to follow the instructions. They were to follow the instructions given by the court. Correct. And that was the only thing they were to follow. Well, yes, Your Honor, but he did not correct the misstatement by defense counsel. Okay, so you're saying the only curative action a trial judge could have taken was in that moment in time to cure what you're saying is a mistake. Correct. Absolutely. And there's law on that. The cases that I cited, the criminal cases I cited, state that in closing argument, distortions of the burden of proof or grounds for reversal. Yes. And in this case, since there was no curative action, my objection was not even sustained. There was no opportunity for me to ask for any help. Well, is there an argument that the curative action is to tell the jury that regardless of what these attorneys say in argument, I am the sole giver and deliverer of the law, and you must follow it. Yes, Your Honor. They're going to get an instruction packet in every case. Well, yeah. They got an instruction packet. That's the judge's responsibility to instruct the jury as to the correct law. But, Your Honor, a counsel should not be allowed, and the criminal cases I've cited say that it's reversal for a counsel to mistake the law, particularly the burden of proof. So, in all of those criminal cases, I'm assuming the correct burden of proof was in the jury instructions, but it was still reversible error for counsel to misstate the law. Okay. The other issue that I wanted to spend my time on, Your Honors, is number four with regard to the informed consent issue. We objected to cross-examination of the plaintiff and presentation to the jury in the form of showing during cross-examination the informed consent form. The reason is every state court that has addressed this issue has held that an informed consent form, and indeed the discussion, what informed consent discussion occurred between a patient and a doctor, is irrelevant unless there is a claim put forth of lack of informed consent. We did not plead lack of informed consent. But did you ask questions about it? No, Your Honor. We did not ask about informed consent. The words informed consent did not come out of our mouth. The only part of the transcript where it was issued was we talked about when it was that they discussed the hernia. At the time that there was one doctor's appointment before the surgery between Ms. Hartman and Dr. Anderson. At that point the gallbladder had been diagnosed and he told her we're going to have to go in and take your gallbladder. He ordered a CT scan at that time to know what he was getting into. It was only after that CT scan came back that showed that she had a small hernia that she had otherwise been unaware of. And Dr. Anderson had been unaware of it. And at some point later in time she was informed we're going to have to take care of this too. We did not discuss, and all of that was not in our direct examination. I think my direct examination that they quote in their brief is about three lines, just establishing that the first time you went to see Dr. Anderson you didn't know about the hernia and were told about it later. That's it. Every state that has looked at this issue has held that discussion, introduction of evidence of informed consent in whatever form, is irrelevant, immaterial, and prejudicial. It goes back to the first state court, I believe, because everything keys back to it, is the Supreme Court of Virginia in the case of Wright v. Kay in 2004. Thank you. When the court said it was a reversible error for a circuit court to refuse to grant a motion and limit it to exclude that evidence. The Delaware Supreme Court in 2013 said evidence is not relevant to a claim for surgical negligence and any evidence of informed consent is inadmissible and that it created a clear danger of confusing the jury. In addition to the cases we've said in our brief, there's been three courts since that have joined the chorus of cases, of courts that have held this. In Missouri, the case Wilson v. Patel in 2017. There was a Nebraska case in 2016 and a Louisiana case in 2015 that I was previously unaware of. All of them say that this is irrelevant, prejudicial, and it's a reversible error to introduce it, because it gives the jury the opportunity to speculate that the plaintiff has somehow consented to negligence, by consenting to the risks of surgery. I'll address any other questions that we have in the limited amount of time, otherwise I'll address any issues you have on the other side. Thank you. That's all we have now. Thank you, Mr. Henderson. Mr. Graham. Good morning, Your Honors. Karen DeGrand on behalf of the defendant appellees, Dr. Richard Anderson and Peoria Surgical Group. May it please the court, counsel. I noted that plaintiff's counsel spent a fair amount of time at the beginning of this argument discussing and arguing the facts of this case, all argument that the jury heard, and heard extensively prior to coming to a decision that Dr. Anderson was not liable, either under the plaintiff's failure to prove negligence or the plaintiff's failure to prove causation. I will note one factual misstatement. There is no evidence of leak being caused during the initial surgery, but having corrected that factual statement, I don't think it's necessary to address all of those facts, because that was all for the jury. And notably, the plaintiffs have not presented this court with an argument that the verdict was against the manifest weight of the evidence. So the purpose of this factual recitation, factual argument, does not seem to be relevant to any issue that's before the court. I'll address the two specific issues that counsel raised. One, the last one counsel raised, was on the question of informed consent. And counsel stated that the plaintiffs did not raise informed consent. Actually, the issue came up because Ms. Hartman testified on direct examination, under counsel's questioning, that she never discussed the hernia repair surgery with Dr. Anderson. So yes, the plaintiffs opened the door on this issue. And in brief testimony, the defense addressed this issue, but there was never any argument about informed consent, or that this consent exonerated Dr. Anderson and Peoria Surgical Group in any way, shape, or form. And counsel has argued about cases from other jurisdictions, including cases that were never cited in the brief, and that we didn't have the opportunity to address. So what you're saying, the informed consent, is in response to the direct examination of no prior discussion of the issue of hernia surgery. Is that correct? That's correct. We wanted to close up that issue, Justice Holdridge. Is there any other way it could have been done without an introduction of informed consent? Well, I think that was an appropriate way to do it. And it was appropriate for the court to find within its exercise of discretion that that was appropriate to do it. But there is another way, isn't there? In the Yamrock case, the one Illinois case that plaintiffs cited that was relevant to this issue, it's quite clear that a consent form may be introduced, even when there's no informed consent issue. It can come in on another issue. And the way for counsel to handle it would have been to ask the court to give a limiting instruction. But counsel did not do that. And instead what counsel did, and what the plaintiffs did, was have Ms. Hartman address the issue again on redirect examination. It was raised again. And Ms. Hartman testified, at that time, I didn't consent to negligent care. So this is what the jury heard on this issue. And the issue was introduced by the plaintiff. The plaintiff had the last word on it. Certainly the way it was handled complied with Illinois law under the Yamrock case that plaintiffs cite. And I don't believe there could possibly be any error, let alone prejudicial error, that resulted from this. With respect to the issue that plaintiff says is the most important issue in this case, the closing argument. Of course, the single comment that counsel cites has to be considered not only in the context of the entire closing argument, but, of course, in the context of the trial. But just in the context of the closing argument, it seems to me that the remarks of defense counsel were perfectly appropriate in the context of responding to plaintiff's argument, which was that the plaintiff needed only to prove a little bit. And also that if you find Dr. Anderson was negligent, you must fine for the plaintiff's. No mention of the burden on causation. And also that if you find Dr. Anderson negligent on either of the issues in the issues instruction, the law absolutely requires, and that's a quote, Your Honors, absolutely requires you to return a verdict for the plaintiff. And you can have doubt. So that's where counsel, and there were objections that were interposed during the closing argument of the plaintiff. And in a very even-handed fashion, as Justice Holdridge commented, the judge said, did not sustain these objections. Said, I'm letting the attorneys argue the law. They're arguing, but you are going to hear the law from me. And there's no argument that there was anything wrong with the jury instructions in this case and the burden of proof. So... Do you think it was error for defense counsel to say that? I do not think it was error. I do not think it was error. I think it was... It wasn't a proper statement of what the law is. I don't think it was, Your Honor. I think not in the context of what was being said. But certainly, if there were any error, the judge handled and cured it by essentially telling the jury, take the argument about the law from the attorneys with a grain of salt. I'm going to tell you what the law is. And that was very even-handed and it was very appropriate. And there were statements made in the heat of arguing by counsel for the plaintiff. There was argument by the defendant. This isolated statement that plaintiff picks out now cannot be said to have prejudiced the plaintiff, especially in light of the statements of the trial judge. The plaintiff in the plaintiff's brief has raised some other issues on the introduction of evidence in the jury instructions on sole proximate cause, has also raised a cross-examination issue that was injected into the trial by the plaintiff showing the slide about the family vacation. If there's any specific thing that the court would like me to address, I'd certainly be happy to do that. I will say on the issue of sole proximate cause, there was quite a bit of argument. This issue is fully briefed. And I believe that the record fully supports the trial court's discretionary rulings on introducing evidence and on instructing the jury. But that issue, which seemed to be by the briefs to be the primary issue that the plaintiff relied on, can be quite simplified. The court doesn't even have to reach the issue of whether that causation evidence was, and the plaintiff isn't very clear about what causation evidence he's arguing about, but the plaintiff cites the case Jones v. Beck and says that's the exact situation that was in the case below. And that Jones v. Beck case illustrates why the plaintiff simply cannot show prejudice from the admission of causation evidence in the sole proximate cause instruction. Because there the appellate court, and I was defense counsel in that case, so I remember this quite clearly, Justice Levin writing for the court, said he didn't agree with the trial court's decision on permitting the instruction, but it would be absolute speculation to say that the instruction was prejudicial because clearly the jury could have very possibly resolved the issue on there was no negligence, there was no breach of the standard of care, and never even reached the issue of causation. And I submit that that's equally true, maybe even more so true on this record. As in Jones, general verdict, no special interrogatories. And the battleground here, yes there was some battleground presentation of evidence and argument on causation, but it seems to me that the record very clearly supports that the battleground here was on negligence. And I think the closing arguments are a great illustration. And the argument that plaintiff's counsel raised as his chief issue for the court, that's a standard of care issue, and he's talking about standard of care. Defense counsel, Mr. Smith, extensively argued standard of care and negligence. That was the marquee issue for the plaintiff, and since there's no special interrogatory to tell us otherwise, there's no reason to even get into the weeds. But clearly the case does or the record does have ample evidence that supported the instruction and that shows that the instruction was properly given. And that's set forth in detail at page 5, 6 of our brief, and the same in the facts and the argument at page 28. The plaintiff contested testimony by combating it, but did not object contemporaneously to much of that testimony. So without the plaintiff being more specific, I think it's difficult for the court, it's certainly difficult for counsel to discern exactly what testimony he's talking about. And I think the case is quite clear. Starting with Leonardi and going forward, McPartland, Nolan out of the Supreme Court, we cite the Ellick case, the Robinson and Sullivan cases out of the appellate court that fully support what occurred here. If the court has any question about this issue of this so-called halting Dr. Anderson's cross-examination, the family vacation slide comes up again, the very subject that caused a mistrial the first time around. There was nothing halted. Nothing of the kind happened. This was a problem of plaintiff's making after the mistrial two years previously, and after when defense counsel saw the line of questioning that plaintiff's counsel was embarking on, asked for a sidebar and said to the judge, we can't have this family vacation answer interrogatory shown with anything that goes up. And the judge said, this better not come up. Counsel said, it's not going to come up. And then he puts up the slide, and there it is, family vacation. And plaintiff's counsel at the time said, well, it was down within 20 seconds. I mean, I'm not going to count off 20 seconds and make you wait, but that's a long period of time. Even 10 seconds is a long period of time. Thank you. Thank you. And, you know, there's no awful proof of what wasn't presented after that. And in my estimation, the trial judge gave the plaintiff's a slap on the wrist for this, which was not to say that this was done over my instruction and not to say draw a negative inference, but to say, well, I don't want you to pay any attention to the questioning on the specific contents of that document. And there was no awful proof to say what wasn't presented, so I don't think that possibly could be a basis for a new trial. I'd be happy to answer any questions. And if there aren't any, I will say I asked the court to note that each and every one of the issues raised by plaintiff's counsel is subject to an abuse of discretion standard of review in our view, and I think we set it out quite clearly in our briefs there was no abuse of discretion and certainly nothing that prejudiced the plaintiffs. The plaintiffs received a fair trial, after which the trial judge heard plaintiff not once but twice, briefed the post-trial motion. Trial judge is the judge who had the best vantage point to determine whether there was any prejudicial errors, said there was not, and I think the record bears out that there was a fair trial. Thanks very much, members. Thank you, Mr. Brown. Mr. Anderton. Thank you, Robert. One of the problems that you all have is the same one that I had, is that a 1,700-page transcript was actually shorter than it actually should have been. And this, I think, is in the informed consent issue. The sidebars were not recorded, and there were numerous sidebars. Judge Coy notes, as Mr. Grand notes, at one point on the last day of evidence that, oh yeah, if there are any issues from the sidebars you want to make a record of, you need to do that. Mr. Smith, being from Peoria, may have been aware of that going on throughout the trial. I was not. We'd actually been informed of that in a sidebar or in a break just shortly before the judge made that statement on the record. The issue of informed consent, there's a sidebar you'll see in there where we approach the bench and talk about it. The door was not open. The entirety of what they purport to be responding to was a question by me, and this is on page 886 of the record. When you met with Dr. Anderson about the surgery, was there any discussion at that time about a hernia surgery? No. The CT that showed the hernia, had that even been taken by the time you saw Dr. Anderson? By the time I saw him the first time, no. And the next time you saw him with surgery, I believe so, yes. No discussion about risks, no question about informed consent, nothing at all in that regard. That did not open the door to the issue. It does not change the fact that introducing the issue of informed consent in a medical malpractice case creates a danger that cannot be corrected. It's a bell that you can't unring. All the courts that have looked at this have noted the propensity of a jury or the risk that a jury will view a signed consent form as consent to a complication that occurred. Well, complications occur in surgeries. Some of those occur because of negligence, some not. You would tell somebody, if you're telling them of risks of surgery, one of the risks of surgery if you gave a fully informed consent risk is that you were operating on the wrong body part. That is a known risk of surgery. It is a every single time negligent cause. It is a never event according to Medicare. Okay? But it's a known risk. So this issue of informed consent should only come in if the claim is about informed consent. That claim was not here. We did not make that claim. It simply introduces a fact that is so prejudicial that that bell can't be unrung. As every single court that's looked at this has said. This is an issue of first impression for Illinois to my knowledge. And I'm sure Mr. Grant would have found it if it was not an issue of first impression. Thank you. There is a case from 1985, though, that gives an idea how other courts have looked at this in Illinois. And it's the Lebrecht versus Tooley case where the fourth district says that an informed consent is legally ineffective to release the medical group in the hospital from liability and the possibility of confusing and prejudicing the jury exists. The issue did not fully come. Is that brief? Yes, it is in the brief. Lebrecht versus Tooley, right. And then the other case is the Hamrick versus Henry case where they said that the informed consent form was not being introduced for it in itself. For some reason that I can't figure out from the case, it was being introduced as an exemplar of the plaintiff's signature. How that was an issue, I don't know. I didn't fully understand why that would have been an issue. But every state court that has looked at this issue has ruled that it's prejudicial, it's irrelevant, and it is reversible here. So I thank you for your time. Thank you very much, Mr. Patterson. And thank you both for your arguments today. We will take this matter under advising to get back to the written disposition within a short while.